UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JACK V. OAKLEY, et al.,

       Plaintiffs,                      Case No. 2:15-cv-1263
                                             CHIEF JUDGE EDMUND A. SARGUS, JR.
   v.                                 Magistrate Judge Terence P. Kemp

THE CITIZENS BANK OF LOGAN, et al.,

       Defendants.

**OPINION AND ORDER**

This matter is before the Court for consideration of Plaintiffs' Motion to Disqualify Counsel [ECF No. 20], Plaintiffs' Motion for Leave to File a Second Amended Complaint [ECF No. 22], Plaintiffs' Motion for Summary Judgment [ECF No. 25], Defendants' Motion to Stay Discovery [ECF No. 11], Defendants' Motions to Strike the Second Amended Complaint [ECF Nos. 23, 24], and Defendants' Motions to Dismiss [ECF Nos. 10, 12, 13, 14]. For the reasons that follow, the Court **GRANTS** Defendants' Motions to Dismiss [ECF Nos. 10, 12, 13, 14], **DENIES** Plaintiffs' Motion for Leave to File a Second Amended Complaint [ECF No. 22], and **DENIES AS MOOT** the remaining motions [ECF Nos. 11, 20, 23, 24, 25].

I.

The parties have a long and complicated history. In 1999, Plaintiffs Jack V. Oakley and Saranne Oakley (collectively, "Plaintiffs") desired to construct a golf course that would cost approximately $2.5 million. (*See* First Am. Compl. ¶¶ 9–11 [ECF No. 4]; State Court Mot. for Summ. J. Op. at PAGEID # 152 [ECF No. 10-1].)[1] In an attempt to acquire funding, Plaintiffs

---

[1] Plaintiffs' do not reference any dates in their First Amended Complaint. (*See generally* First Am. Compl.) Plaintiffs do, however, reference prior litigation and various documents. (*See generally id.*)

coordinated with Defendants—The Citizens Bank of Logan (the "Bank"), some of its employees (Bryan K. Starner, Fred Weghorst, and James Lewis), and a parent company (Citizens Independent Bancorp, Inc.) (collectively, "Defendants").[2] (*See* First Am. Compl. ¶¶ 12–19.) Defendants negotiated to loan money to Plaintiffs who would, in turn, build a golf course. (*See id.*) The project did not go as planned though—nor did the loan. (*See id.* ¶¶ 14–23.)

In the spring of 1999, Mr. Starner, the President and CEO of the Bank at the time, purportedly agreed to loan Plaintiffs 80% ($2 million) of the project's price tag. (*See id.* ¶¶ 5, 11; State Court Mot. for Summ. J. Op. at PAGEID # 152.) Around this same time, Mr. Starner also allegedly stole Mr. Oakley's "Stock Certificate for Drydock Coal Co." (First Am. Compl. ¶ 12.)

Plaintiffs began constructing the golf course in the summer of 1999. (*See id.* ¶ 13; State Court Mot. for Summ. J. Op. at PAGEID # 152.) The Bank financed this initial construction through a series of unsecured notes. (*See* First Am. Compl. ¶ 13; State Court Mot. for Summ. J. Op. at PAGEID # 152.) During that period, the Bank "made numerous inspections, always pleased with the golf course project and its progress." (First Am. Compl. ¶ 13.) The Bank "assured [Mr. Oakley] that he would be given permanent financing." (*Id.*) Also during the early phases of construction, the Bank "told [Mr. Oakley] that they wanted him to purchase $35,000 of Bank stock that they would finance." (*Id.* ¶ 14.) Mr. Oakley purchased the stock "but later when

---

Plaintiffs attach some of these documents, and portions of the docket from the prior proceedings, as exhibits to their Memorandum in Opposition to the Motions to Dismiss [ECF No. 15]. Based on these documents, and from reviewing the referenced court proceedings, the Court has reconstructed a timeline of the events described in the First Amended Complaint.

[2] Michael D. Martz is also listed on the caption of Plaintiffs' First Amended Complaint. (First Am. Compl. at 1.) His name appears beneath "Citizens Independent Bankcorp Inc. Logan, OH 43138." (*Id.*) Mr. Martz is an attorney for one of the law firms that represents several of the Defendants. None of the allegations in the First Amended Complaint are directed against Mr. Martz. (*See generally id.*) Plaintiffs do not even mention his name aside from listing it in the caption. (*See generally id.*) Accordingly, even though Mr. Martz does not explicitly join any of the Motions to Dismiss, the Court finds that Plaintiffs have failed to state a claim against him.

2

[the Bank] told him he had a capacity problem, he requested [that the Bank] repurchase the stock from him." (*Id.*)

As the project progressed, the Bank decided to replace the unsecured notes with a secured note and mortgage. (*See* State Court Mot. for Summ. J. Op. at PAGEID # 152.) "Attorney Paul Gerig did a title examination and arranged for a title insurance policy of $1,750,000." (First. Am. Compl. ¶ 15.) This was the amount that Mr. Oakley had estimated to be "the final cost of the golf course." (*Id.*) The note and mortgage that the Bank presented to Mr. Oakley was in the amount of $1 million. (*Id.* ¶ 16.) Although Mr. Oakley believed that he would need at least $1.75 million to construct the golf course, he signed the note nonetheless. (*See id.* ¶¶ 16–17.) He signed the $1 million note on April 14, 2000, "under duress, as he believed that if he did not sign it, then there would be no more money and his notes called." (*See id.* ¶ 17 (emphasis deleted); State Court Mot. for Summ. J. Op. at PAGEID # 152.) Additionally, Mr. Oakley alleges that the note that he signed did not have 337.50 shares of Drydock Coal Company pledged as security. (First Am. Compl. ¶ 18.) This pledge was allegedly added after the closing. (*Id.*)

Three months after the closing, the Bank purportedly agreed to loan another $400,000 to Plaintiffs for an irrigation system. (*Id.* ¶ 22.) Mr. Oakley ultimately signed a note in June 2000, in the approximate amount of $237,000, for the irrigation system. (*See* State Court Mot. for Summ. J. Op. at PAGEID # 153.)

In August 2001, with the loans to the Bank in default and the golf course still incomplete, Mr. Oakley sued the Bank in the Athens County Court of Common Pleas for breach of contract and fraudulent misrepresentation. (*See* First Am. Compl. ¶ 24; State Court Mot. for Summ. J. Op. at PAGEID # 153.) The Bank, in turn, brought several counterclaims against Mr. Oakley. (*See* State Court Mot. for Summ. J. Op. at PAGEID # 156.) In a September 2002 summary

judgment decision, the common pleas court dismissed Mr. Oakley's claims and entered judgment in favor of the Bank on several of its counterclaims. (*See* First Am. Compl. ¶ 24; State Court Mot. for Summ. J. Op. at PAGEID # 156.) The Bank's remaining counterclaims were set for a bench trial. (State Court Mot. for Summ. J. Op. at PAGEID # 156.) Mr. Oakley appealed the summary judgment decision to Ohio's Fourth District Court of Appeals. (*See* First Am. Compl. ¶ 24.)

In June 2003, while the case was still pending in the Fourth District, Plaintiffs filed for bankruptcy. (*Id.*; Bankr. Court Docket at PAGEID # 181 [ECF No. 10-1].) Over Plaintiffs' objection, the Bankruptcy Court eventually approved the Trustee's proposal to compromise Mr. Oakley's claims against the Bank. (Bankr. Court Op. at PAGEID # 266 [ECF No. 10-1].) In early 2005, the Trustee compromised the claims for $30,000. (*See id.*; First Am. Compl. ¶ 25.)

Plaintiffs filed the present action before this Court on April 13, 2015. They amended their Complaint on May 12, 2015. Plaintiffs assert four counts: three state law claims (fraud, breach of contract, and slander) and one federal claim (a violation of § 10(b)(5) of the Securities Exchange Act of 1934). (First Am. Compl. ¶¶ 33–42.) On October 15, 2015, Plaintiffs requested permission to amend their Complaint a second time. (Pls.' Mot. for Leave to File Second Am. Compl. at 2 [ECF No. 22].)[3] They seek leave to add a RICO (Racketeer Influenced and Corrupt Organizations Act) claim. (*Id.*)

Defendants have each moved to have the case dismissed. (*See generally* Defs.' Mots. to Dismiss [ECF Nos. 10, 12, 13, 14].) Defendants also move to stay discovery and to strike Plaintiffs' Motion for Leave to File a Second Amended Complaint. (*See generally* Defs.' Mot. to Stay Disc. [ECF No. 11]; Defs.' Mots. to Strike [ECF Nos. 23, 24].)

---

[3] Plaintiffs' filing resembles a complaint. (*See generally* Pls.' Mot. for Leave to File Second Am. Compl.) Plaintiffs note, however, that the document is a "[m]otion to file [a] second amended Complaint." (*Id.* at 2.)

4

II.

The Court will begin by addressing Defendants' Motions to Dismiss.

A. **Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Generally, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.* Federal Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this standard, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). When considering a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

A court typically cannot consider "matters outside of the pleadings" when deciding a motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). There are several exceptions to this general rule though. Exhibits to the pleadings are "part of the pleadings for all purposes." Fed. R. Civ. P. 10(c). Documents not attached to a plaintiff's complaint but

introduced by the defendant on a motion to dismiss will also be considered as part of the pleadings if "'they are referred to in the plaintiff's complaint and are central to her claim.'" *Weiner*, 108 F.3d at 89 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Additionally, a court may consider "materials that are public records or otherwise appropriate for taking judicial notice." *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 925 (N.D. Ohio 2009); *see also Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").

In deciding Defendants' Motions to Dismiss, the Court will consider the documents and prior judicial proceedings referenced in the First Amended Complaint. Many of the relevant documents are attached to Plaintiffs' Memorandum in Opposition to the Motions to Dismiss [ECF No. 15]. Other relevant documents, including decisions from the state court and bankruptcy court proceedings, are attached to one of Defendants' Motions to Dismiss [ECF No. 10].

**B.  Federal Securities Fraud Claim**

Defendants contend that Plaintiffs' federal securities fraud claim was filed outside of the applicable statute of limitations and, thus, must be dismissed. The Court agrees.

Prior to 2002, actions brought under § 10(b) of the Securities and Exchange Act were subject to a one-year statute of limitations and a three-year statute of repose. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991) (adopting the limitations period of 15 U.S.C. § 78i(e)). Following the enactment of the Sarbanes-Oxley Act of 2002, the statute of limitations for a securities fraud claim was extended to "the earlier of— (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28

U.S.C. § 1658(b).[4] The two-year portion of the statute of limitations begins to run "when the plaintiff did in fact discover, or . . . when a reasonably diligent plaintiff would have discovered," the facts constituting the securities fraud violation. *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010). The five-year portion of the statute of limitations begins to run at the time of the violation, irrespective of when the violation is discovered. *See id.* at 650 (noting that § 1658(b)(2) features "an unqualified bar on actions instituted '5 years after such violation,' . . . giving defendants total repose after five years").

Here, a review of the First Amended Complaint (as well as the documents and court proceedings that it references) clearly establishes that Plaintiffs' securities fraud claim is time-barred. The securities fraud claim stems primarily from a fifteen year old contract—the April 14, 2000 note and mortgage agreement. (*See* First Am. Compl. ¶¶ 16–17 [ECF No. 4]; State Court Mot. for Summ. J. Op. at PAGEID # 152 [ECF No. 10-1].) And, in fact, all of the events underlying Plaintiffs' securities fraud claim occurred prior to August 2001, when Mr. Oakley sued the Bank in state court for fraud and breach of contract. (*See* First Am. Compl. ¶¶ 9–24, 27–28, 38–42; State Court Mot. for Summ. J. Op. at PAGEID # 152–54; Pls.' Mem. in Opp'n to Mots. to Dismiss at 5–8 [ECF No. 15].) Even if the Court were to assume that Plaintiffs did not discover the facts underlying their federal securities fraud claim at the same time that they discovered the facts underlying their state fraud claim, Plaintiffs federal securities fraud claim would still be time-barred. A securities fraud claim must be brought within five years of a violation—regardless of when the plaintiff discovers the underlying facts. *See* 28 U.S.C. § 1658(b). Plaintiffs waited roughly fifteen years to bring their securities fraud claim—ten years beyond the outer limit established under Sarbanes-Oxley. (*See* Compl. at 1 [ECF No. 1].)

---

[4] The limitations period established under Sarbanes-Oxley applies to securities fraud claims "that are commenced on or after . . . [July 30, 2002]." 28 U.S.C. § 1658 (listing the effective date of the 2002 amendment).

7

Plaintiffs assert that their securities fraud claim is timely because it was filed within the fifteen-year statute of limitations "for a written agreement." (*See* Pls.' Mem. in Opp'n to Mots. to Dismiss at 4.) But even if a fifteen-year statute of limitations applies to state breach of contract claims, a federal securities fraud claim is governed by the shorter limitations period noted above. *See* 28 U.S.C. § 1658. Plaintiffs' securities fraud claim is dismissed.

In an effort to salvage their case, Plaintiffs move for leave to file a Second Amended Complaint. But Plaintiffs' Second Amended Complaint does not include any additional allegations that would save their securities fraud claim from dismissal. (*See generally* Pls.' Mot. for Leave to File Second Am. Compl. [ECF No. 22].) Rather, Plaintiffs seek to add a RICO claim. (*Id.* at 2.) Civil RICO claims are governed by a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 552 (2000). "The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005). The predicate acts that underlie Plaintiffs' RICO claim are (1) "Theft of Plaintiff's Drydock Stock," which allegedly occurred in 1999, and (2) "Wire Transfer Fraud," which Plaintiffs allegedly discovered on February 28, 2008. (*See* Pls.' Mot. for Leave to File Second Am. Compl. at 2–3.) The injuries caused by these actions likely manifested themselves in 1999, when Mr. Starner allegedly stole the Drydock stock, or in the summer of 2001, when Defendants purportedly pledged the stock as security for the $1 million note. (*See id.*; First Am. Compl. ¶ 18.) Plaintiffs, however, attempt to bring their RICO claim more than fourteen years later; ten years beyond the statute of limitations. And even if the Court were to assume that the statute of limitations only began to run on February 28, 2008, when Plaintiffs allegedly discovered the "Wire Transfer Fraud," Plaintiffs would still have needed to bring their RICO claim by February 28, 2012.

8

Permitting Plaintiffs to amend their Complaint would be futile; their Motion for Leave to Amend is therefore denied.

C.  **State Law Claims**

As Plaintiffs acknowledge, the Court has original, exclusive jurisdiction over Plaintiffs' federal securities fraud claim, and the Court has supplemental jurisdiction over Plaintiffs' related state law claims. (*See* First Am. Compl. ¶ 8.) Once all claims over which a federal court had original jurisdiction have been dismissed, the exercise of supplemental jurisdiction is within the court's discretion. *Carlsbad Techs., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009). The balance of considerations tends to weigh in favor of declining the exercise of supplemental jurisdiction when a court dismisses all claims over which it had original jurisdiction. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 953 (6th Cir. 2010). Here, having dismissed Plaintiffs' federal securities fraud claim—the only claim over which the Court had original jurisdiction—the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. The Court declines to exercise supplemental jurisdiction in light of the fact that Plaintiffs' state law claims, if reviewed by the Court, would likely be dismissed anyway on various independent grounds (e.g., res judicata, statutes of limitations, and witness immunity). (*See* Defs.' Mot. to Dismiss at 19–29 [ECF No. 10].)

### III.

For the reasons stated above, Defendants' Motions to Dismiss [ECF Nos. 10, 12, 13, 14] are **GRANTED** and Plaintiffs' Motion for Leave to File a Second Amended Complaint [ECF No. 22] is **DENIED**. All of the remaining motions [ECF Nos. 11, 20, 23, 24, 25] are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

3-21-2016
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**

10